UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURA A. JENKINS, | : | NO. 1:24-CV-01724 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| HARRISBURG ROTARY CLUB | : | |
| A.K.A. ROTARY CLUB OF | : | |
| HARRISBURG, AND ROTARY | : | |
| INTERNATIONAL, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

This matter comes before the Court upon Defendants Rotary International ("RI") and Rotary Club of Harrisburg's ("RCH") Motions for Summary Judgment. Docs. 35, 38. Plaintiff Maura Jenkins opposed, and the Defendants replied. Docs. 42, 44, 46, 47. The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons below, the Court grants the Defendants' Motions for Summary Judgment.

**I.   BACKGROUND**

The Court begins with the undisputed and disputed facts. Pursuant to the Middle District of Pennsylvania's Local Rules and the Federal

Rules of Civil Procedure, the Court deems admitted Defendants' statements of material facts to the extent that the Plaintiff's responses fail to controvert them.[1]

### A.   Undisputed Facts

Plaintiff alleges Title VII employment discrimination claims. Amended Complaint, Doc. 8 at 1. RCH, a community service organization, is a member club of RI, an association of member Rotary clubs throughout the world. RCH's Statement of Undisputed Material Facts ("SUMF"), Doc. 38-1 ¶¶ 11, 16; Pl.'s Response to RCH's SUMF, Doc. 45 ¶¶ 11, 16. Both entities are separate and distinct. RI's SUMF, Doc. 37 ¶ 9; Pl.'s Response to RI's SUMF, Doc. 43 ¶ 9(c).

---

[1] To one third of the Defendants' statements of material facts, the Plaintiff responded, "cannot confirm or deny." Doc. 43 ¶¶ 2–5, 7–8, 10–11, 14–16, 18, 20–21, 23, 26–32, 44, 52, 54, 61, 63, 84; Doc. 45 ¶¶ 11–14, 16–21, 23–28, 35. These responses fail to dispute Defendants' statements of facts, and so those facts are deemed admitted for the purpose of summary judgment. M.D. Pa. L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); Fed. R. Civ. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion"); *Beard v. Helman*, 722 F. Supp. 3d 521, 527–28 (M.D. Pa. 2024) ("Where nonmovants fail to support denials with record citations, a common sanction is to deem these allegations admitted.").

In 2023, Plaintiff Maura Jenkins worked as a club administrator for RCH, until it terminated her employment. Doc. 38-1 ¶¶ 29–30; Doc. 45 ¶¶ 29–30. RCH terminated the Plaintiff, its only employee, because the Plaintiff violated RI's Code of Conduct via a Facebook post. Doc. 38-1 ¶¶ 27, 30, 47; Doc. 45 ¶¶ 27, 30, 47. That Facebook post depicted a small child saying, "Mommy, I think I'm a boy," to which the child's mother responded, "Well you're not." Doc. 38-1 ¶¶ 40–41; Doc. 45 ¶¶ 40–41.

RCH first learned about the Plaintiff's Facebook post from Una Martone, a former volunteer for RI. Doc. 37 ¶¶ 53–54, 58; Doc. 43 ¶¶ 53–54, 58. Martone emailed the "Rotary Club of Harrisburg Leadership," criticizing the Plaintiff's Facebook post as "unacceptable." Ex. 16, Doc. 37-16 at 2. The email's recipients did not include any officer or director of RI. Doc. 37 ¶ 61; Doc. 43 ¶ 61. A few days after receiving Martone's email, RCH convened a board meeting. Doc. 37 ¶ 67; Doc. 43 ¶ 67. The RCH board voted by a majority to terminate the Plaintiff's employment. Doc. 37 ¶ 71; Doc. 43 ¶ 71.

B. **Disputed Facts**

The parties primarily dispute: (1) whether RI was the Plaintiff's employer (under the single employer theory of liability); and (2) whether

3

Martone was an employee, representative, or agent of RI. Pl.'s Br., Doc. 42 at 6–8; RCH's Br., Doc. 39 at 2–5; RI's Br., Doc. 36 at 19.

The Plaintiff maintains that RI employed her because, among other reasons, "the facts referenced in [the Plaintiff's] Amended Complaint are already admitted as true." Doc. 45 ¶ 8(b)(ii)–(iii).[2] The Plaintiff also asserts that RI "played a substantial role in managing [RCH] and in the employment termination of Plaintiff . . . , including but not limited to direct actions through RI's employee and/or Agent Una Martone." *Id.* ¶ 8(c).

---

[2] The Plaintiff seems to assert that because the Defendants argue there are no disputed issues of fact that would defeat summary judgment under Rule 56, that Defendants have "admitted as true" all allegations in the Amended Complaint. This contention has no basis in any legal authority the Court is aware of. Elsewhere, Plaintiff argues that this Court must accept all of the allegations in the Amended Complaint as true under Rule 12(b), citing to Supreme Court and Third Circuit precedents. *See*, *e.g.*, Doc. 44 at 2, citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993) and *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76 (3d Cir. 2003), *inter alia*. Plaintiff provides no explanation why the Court should apply the Rule 12(b) motion to dismiss standard to decide a Rule 56 motion for summary judgment. All of the cases Plaintiff relies on for this proposition deal with motions to dismiss, not summary judgments, and are therefore irrelevant. The Court will not accept as true Plaintiff's allegations for the purposes of deciding this motion, but will instead apply the appropriate summary judgment standard of review.

The Defendants disagree. Doc. 39 at 2; Doc. 36 at 19. They contend that RI and RCH are separate and distinct legal entities, and that RCH is not a subsidiary of RI, but is an independent, autonomous club. Doc. 37 ¶ 9; Doc. 38-1 ¶ 15. The Defendants agree with each other that: (1) neither RCH, "nor its members, agents, or employees, have any authority to 'act, negotiate, or contract on behalf of [RI].'" Doc. 38-1 ¶ 21 (quoting Doc. 37 ¶ 16); (2) "[RI] plays absolutely zero role in the management of or governing of the daily and internal activities—including the hiring, firing, training, and/or supervising of employees—of [RCH]." *Id.* ¶ 22 (citing Doc. 37 ¶ 25); (3) no RCH officer served as an employee, officer or director of RI, or were in any capacity authorized to act on RI's behalf. Doc. 37 ¶¶ 26–28; Doc. 38-1 ¶ 25; and (4) Martone was never an employee of RCH or RI. Doc. 37 ¶ 52; RCH's Reply Br., Doc. 47 at 3–4.

### C.  Procedural History

On October 9, 2024, the Plaintiff filed a complaint, alleging a violation of Title VII of the Civil Rights Act of 1964. Doc. 1. Finding deficiencies, the Court granted the Plaintiff leave to amend. Doc. 6. The Plaintiff filed the Amended Complaint against the Defendants, alleging religious discrimination and retaliation in violation of Title VII. Doc. 8

5

¶¶ 61–132. The Defendants moved to dismiss. Docs. 23, 28. Following a conference with the parties, the Court ordered a limited three-month period of discovery on the issue "surrounding who was Jenkins's employer, including whether the defendants were acting as a single entity and whether [RCH] was acting as an agent of [RI]." March 12, 2025, Order, Doc. 31 at 1. After discovery, the Defendants moved for summary judgment. Docs. 35, 38. The motions are fully briefed. Docs. 42, 44, 46, 47. The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment.[3] Doc. 22.

---

[3] RI seeks to renew its motion to dismiss. Doc. 36 at 4. The parties, however, have completed discovery on the issues raised in the Defendants' motions to dismiss pursuant to this Court's March 12, 2025, Order. Doc. 31 at 1. Because RI asks the Court to consider facts arising from discovery, and because the Court considers matters outside the pleadings to decide motions for summary judgment and not motions to dismiss, the Court denies the Defendant's request to renew its motion to dismiss as moot. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint."); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 255). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are "the province of the factfinder." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role, at the summary judgment stage, is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine issue as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

Under Title VII, an "employer" is an entity with "fifteen or more employees." 42 U.S.C. § 2000e(b). This "threshold number of employees for application of Title VII is an element of a plaintiff's claim." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). Here, the Plaintiff "fails to make

a showing sufficient to establish the existence" of this essential element. *Celotex*, 477 U.S. at 322. Viewing the facts in the light most favorable to the Plaintiff, no reasonable jury would consider RI and RCH a single entity such that they were the Plaintiff's "employer" under Title VII's definition. *See Anderson*, 477 U.S. at 248. For the reasons below, the Court will grant the Defendants' motions for summary judgment. *See Celotex*, 477 U.S. at 322–23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

### A. There is no genuine dispute that RCH does not qualify as an employer under Title VII's threshold element.

The parties agree that RCH had only one employee when it terminated the Plaintiff's employment and currently has no employees. Doc. 38-1 ¶ 27; Doc. 45 ¶ 27. Because RCH has fewer than fifteen employees, under Title VII, RCH is not an employer. *See* 42 U.S.C. § 2000e(b). The Plaintiff's Title VII claim against RCH, therefore, fails as a matter of law. But, the Plaintiff argues, RCH and RI were a "single entity" under the circumstances and therefore qualify as an "employer"

9

under Title VII because the total number of employees can be aggregated. Doc. 42-2 at 6. The undisputed facts do not support the Plaintiff's theory.

### B. There is no genuine dispute that the Defendants are not a single employer to satisfy Title VII's numerosity requirement.

In the Third Circuit, *Nesbit v. Gears Unlimited, Inc.* governs the limited circumstances in which a Court may consider two nominally separate entities as a single employer to reach Title VII's numerosity requirement. 347 F.3d 72, 85–89 (3d. Cir. 2003). Failing to proffer evidence that RCH meets the threshold employee number, the Plaintiff seeks to combine the Defendants as a single employer to meet the minimum employee threshold. Doc. 45 ¶ 27 ("[F]or the purpose of Title VII, [RCH] and RI should be treated as one entity.").

Under *Nesbit*, consolidation of separate entities as a single employer is appropriate when: (1) a company splits itself into multiple entities to evade coverage under Title VII; (2) a parent company, in a parent-subsidiary relationship, directs the subsidiary to perform the allegedly discriminatory act in question; or (3) companies have operations that are so united that nominal employees of one company are treated interchangeably with those of another. 347 F.3d at 86–87. Here,

the parties do not suggest that the Defendants split themselves into multiple entities to evade Title VII. Doc. 36 at 34; Doc. 42 at 5. The facts, viewed in the light most favorable to the Plaintiff, more closely suggest the latter two scenarios under *Nesbit*. Under either scenario, however, the Plaintiff fails to demonstrate that the Defendants should be treated as a single employer.

First, under the second scenario, the Plaintiff fails to submit evidence that a parent-subsidiary relationship existed between the Defendants. In fact, the Plaintiff admits that RI is a separate and distinct legal entity. Doc. 37 ¶ 9; Doc. 43 ¶ 9(c). Moreover, the Plaintiff fails to cite to evidence that can sufficiently demonstrate that RI directed RCH to commit a Title VII discriminatory act. *See Nesbit*, 347 F.3d at 86. Instead, the Plaintiff argues that RI exercised control over RCH to terminate her employment by adopting RI's code of conduct. *See* Doc. 42 at 7–8 (citing to Exs. 25, 26, 28). But an employment relationship cannot be created by a member club—or the club's employees—adopting an association's code of conduct. To draw an analogy, the American Bar Association would not qualify as employer of a law firm's employees by

virtue of the firm unilaterally adopting the ABA's Model Rules of Professional Conduct.

In no sense does the subscription to a code of conduct form an employment relationship. That relationship depends on "the level of control the [employer] exerted over the [employee]: which entity paid the employee's salaries, hired and fired them, and had control over their daily employment activities." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013) (citation modified). Here, RI exercised no control over RCH and its operations. Doc. 38 ¶ 22 (citing Doc. 37 ¶ 25 ("[RI] plays [no] role in . . . the hiring, firing, training, and/or supervising of employees—of RCH.")). Thus, the Plaintiff fails to sufficiently demonstrate *Nesbit*'s second scenario.[4]

---

[4] The Plaintiff additionally argues that RI directed her termination by "direct actions through RI's employee and/or Agent Una Martone." Doc. 45 ¶ 8(c). To support this argument, she underscores Martone's signature contained in the email addressed to RCH's Leadership. Doc. 45 ¶ 8(c) (citing Doc. 37-16 at 2). The Plaintiff reasons that because Martone signed the email listing Martone's credentials as "Training Leader, Rotary International," Martone is RI's employee. *Id.* ¶ 8(c)(i)(e). But an email signature alone does not establish that Martone was RI's employee. *See Covington*, 710 F.3d at 119. Indeed, Defendants assert that "Martone was never an employee of RCH or RI." Doc. 37 ¶ 52. Plaintiff fails to effectively controvert that assertion with anything of substance from the record.

Second, under the third *Nesbit* scenario, the Plaintiff fails to controvert the Defendants' declaration that they share no operation. Doc. 38-1 ¶¶ 21–22 (citing Doc. 37 ¶¶ 16, 25). This Court has declined to aggregate separate entities for a Title VII claim even where it found management were interconnected. *Spalla v. Elec. Mfg. Servs. Grp.*, No. 16-821, 2017 U.S. Dist. LEXIS 19750, at *10 (M.D. Pa. Feb. 13, 2017) (finding no single employer consolidation even where two entities shared officers); *Nesbit*, 347 F.3d at 89 ("In the absence of more significant operational entanglement, common ownership and *de minimis* coordination in hiring are insufficient bases to disregard the separate corporate forms"). Here, the Defendants share no common officers or directors. Doc. 37 ¶¶ 26–28; Doc. 38-1 ¶ 25; Doc. 43 ¶¶ 26-28; Doc. 45 ¶ 25.[5] They do not coordinate any hiring or terminating of employees.

---

[5] The Plaintiff's responses to Defendants' Statements of Facts are muddled, confusing, and largely ineffectual. The Plaintiff frequently admits that she "cannot confirm or deny" Defendants' assertions, "outside of Defendant submittal(s)." *See*, *e.g.*, Doc. 45 ¶ 25. Far too often, the Plaintiff attempts to lead the Court on a goose chase, cross-referencing to previous responses that are often irrelevant. For example, in response to the assertion that "none of [RCH's] board members served as an employee, agent, or officer of Rotary International" during the Plaintiff's employment, the Plaintiff directs the Court to assertions about Una Martone, whom the Plaintiff has never alleged to be a board member of RCH. *Id.* Because the Plaintiff failed to controvert such facts with

Doc. 38-1 ¶ 22 (citing Doc. 37 ¶ 25). Neither does the Plaintiff offer evidence to suggest that the Defendants overlap in personnel decisions. *See Showers v. Endoscopy Ctr. of Cent. Pa., LLC*, 58 F. Supp. 3d 446, 457–59 (M.D. Pa. 2014) (finding genuine issue of material fact as to whether two entities are consolidated where the two entities had increased overlap in management and personnel decisions, shared the same building, and were more likely to be treated as a single unit by third parties). In fact, RCH, its members, agents, or employees, have no authority to "act, negotiate, or contract on behalf of RI." Doc. 38-1 ¶ 21 (quoting Doc. 37 ¶ 16). Without any evidence of overlap between the Defendants, the Plaintiff fails to demonstrate *Nesbit*'s third scenario.

The Plaintiff claims that "the record is flooded with evidence" that RI exercised control over RCH, but does not identify a single piece of record evidence to support that claim. Doc. 42-2 at 6. Instead, Plaintiff cites to multiple paragraphs in her Responses to Defendants' Statement of Facts,[6] almost all of which contain further cross-references and

---

"references to the parts of the record" that support her position, those facts could be deemed admitted. L.R. 56.1.

[6] The Plaintiff neglected to include a docket citation to specify which of her two Responses she was asking the Court to search. Ultimately, it is

re-directions. It is up to the Plaintiff to directly and clearly provide the Court with record evidence that contradicts Defendants' asserted undisputed facts. That is what she is required to do as a litigant facing summary judgment. "'Judges are not like pigs, hunting for truffles buried in' the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006). Nonetheless, the Court has attempted to decipher the Plaintiff's Responses (Docs. 43, 45) and has discerned no genuine issues of material fact in dispute as to the essential elements of the claims challenged, and has certainly found no support for the contention that the "record is flooded" with evidence that the Defendants operated as a single entity or that RI controlled RCH.

    The Plaintiff thus fails to establish any disputed issues of material fact regarding the issue of whether the Defendants can be considered a single employer or that RI can be considered the Plaintiff's employer, rendering Title VII inapplicable to either Defendant.

---

of no matter, as both documents are substantially the same, though the paragraph numbers differ.

## IV. **CONCLUSION**

Because the Plaintiff fails to show any operational entanglement, common ownership, or coordination in hiring between the Defendants, the Court cannot "disregard the separate corporate forms of" RI and RCH. *Nesbit*, 347 F.3d at 89. There is no genuine issue of material fact as to whether RI and RCH may be consolidated under the single employer test. The Defendants, therefore, cannot be viewed as a single employer to meet Title VII's numerosity requirement. And the Plaintiff does not otherwise dispute that RCH had only one employee, herself, rendering RCH not an "employer" under 42 U.S.C. § 2000e(b). Likewise, Plaintiff raises no other allegation that RI was Plaintiff's "employer," outside of the claim that the two entities acted jointly. Thus, the undisputed facts show that Plaintiff cannot establish an essential element of her Title VII claims. Accordingly, the Court will grant the Defendants' motions for summary judgment.

Date: October 16, 2025                    s/*Sean A. Camoni*
                                           Sean A. Camoni
                                           United States Magistrate Judge